UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DOMINIK J. GABRIELSEN,

        Plaintiff,

-v-

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

---

Case No. 12-CV-5694 (KMK)(PED)

<u>ORDER ADOPTING REPORT &
RECOMMENDATION IN PART</u>

KENNETH M. KARAS, District Judge:

 Pro se Plaintiff Dominik J. Gabrielsen ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"), who found that Plaintiff was not entitled to disability insurance benefits under the Social Security Act ("SSA"). The Court referred the case to Magistrate Judge Paul E. Davison ("Judge Davison"), pursuant to 28 U.S.C. § 636(b)(1)(A). (Dkt. No. 12.) The Commissioner moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 18.) Judge Davison issued a Report and Recommendation ("R&R") recommending that the Court deny the Commissioner's Motion and remand the case for further administrative proceedings. (Dkt. No. 26.) The Commissioner filed timely objections to the R&R, which the Court considers here. (Dkt. No. 29.) For the reasons discussed below, the Court adopts the Report and Recommendation in part and remands the case to the Commissioner for further administrative proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g).

I. Discussion

A. Standard of Review

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Bradley v. Comm'r of Soc. Sec.*, No. 12-CV-7300, 2015 WL 1069307, at *1 (S.D.N.Y. Mar. 11, 2015) (same). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

When a party submits timely objections to a report and recommendation, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Bradley*, 2015 WL 1069307, at *1. Further, the district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *See Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)); *see also Alverio v. Colvin*, No. 13-CV-4722, 2015 WL 1062411, at *1 (S.D.N.Y. Mar. 9, 2015) ("When the parties make no objections to the [r]report [and recommendation], the [c]ourt may adopt [it] if there is no clear error on the face of the record." (internal quotation marks omitted)).

Regarding the merits of a Social Security claim, the reviewing court's function is not to determine whether the plaintiff is disabled, and therefore entitled to Social Security benefits. *See*

*Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("[I]t is not our function to determine *de novo* whether plaintiff is disabled.") (alteration and internal quotation marks omitted); *Riordan v. Barnhart*, No. 06-CV-4773, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled . . . ."); *Van Dien v. Barnhart*, No. 04-CV-7259, 2006 WL 785281, at *8 (S.D.N.Y. Mar. 24, 2006) ("The court is not permitted to determine whether the claimant is disabled *de novo*."). Instead, the reviewing court determines only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d. Cir. 1999) (noting that a court will only overturn the determination of an Administrative Law Judge ("ALJ") if it is "based upon legal error" or "not supported by substantial evidence" (internal quotation marks omitted)); *Morrel v. Massanari*, No. 01-CV-186, 2001 WL 776950, at *5 (S.D.N.Y. July 11, 2001) ("A court's review of the Commissioner's final decision is limited to determining whether there is 'substantial evidence' in the record to support such determination.").

To determine whether a claimant is entitled to disability benefits, the ALJ must follow a five-step sequential analysis. *See* 20 C.F.R. § 404.1520(a)(1); *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999) (outlining the five steps). First, the ALJ determines whether the claimant is currently engaged in substantial gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 1520(b); *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 501 (S.D.N.Y. 2014). Second, if the claimant is not so engaged, the ALJ considers whether the claimant has a severe impairment that limits his or her ability to participate in work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 1520(c); *McIntyre*, 758 F.3d at

150; *Rolon*, 994 F. Supp. 2d at 501. Third, if so, the ALJ determines whether the impairment is listed, or equal to, those in 20 C.F.R. § 404.1520, Part 404, Subpart P, Appendix 1 ("Appendix 1"); if it is, disability is presumed, and the claimant is considered unable to perform substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 1520(d); *McIntyre*, 758 F.3d at 150; *Rolon*, 994 F. Supp. 2d at 501. Fourth, if the impairment does not meet or equal the criteria of a listed impairment, the ALJ assesses whether the claimant retains functional capacity to perform his or her past work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (e)-(f); *McIntyre*, 758 F.3d at 150; *Rolon*, 994 F. Supp. 2d at 501. Fifth and finally, where a claimant is deemed unable to perform his or her past work, the ALJ "determine[s] whether there is other work within the national economy" that the claimant is qualified to perform. *McIntyre*, 758 F.3d at 150; *see also Peterson v. Barnhart*, 219 F. Supp. 2d 491, 493 (S.D.N.Y. 2002); 20 C.F.R. §§ 404.1520(a)(4)(v), 1520(g) (noting that the ALJ must show that there are other jobs existing based on the claimant's vocational factors, which include age, education, and work experience, as well as the claimant's residual functional capacity). If the ALJ concludes that there is work in the national economy that the individual can perform, then the ALJ must determine that the individual is not disabled. *See McIntyre*, 758 F.3d at 150; 20 C.F.R. § 404.1520(a)(4)(v).[1]

B. Analysis

The Court adopts the extensive recitation of facts set forth by Judge Davison, (Report and Recommendation ("R&R") 2–24 (Dkt. No. 26)), and assumes the Parties' familiarity with it.

---

[1] The claimant has the burden of proof for the first four steps, but the burden rests with the Commissioner at the fifth step—the determination on alternative work—if the analysis proceeds that far. *See McIntyre*, 758 F.3d at 150; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting that the Commissioner has the burden of proof at step five "only if the sequential evaluation process proceeds to the fifth step").

The Court will repeat only those facts that are relevant to the consideration of Defendant's objections.

The Commissioner objects to Judge Davison's recommendation that the Commissioner's Motion be denied and that the case be remanded for further proceedings because the ALJ failed to properly develop and consider the record. (*See* R&R 35.) First, the Commissioner argues that the ALJ properly developed the record, and that Judge Davison erroneously ruled (a) that "a different standard for developing the record applies when a claimant asserts a disability based on a mental impairment," and (b) that the ALJ was "required to [re-contact] a treating physician where the physician's treatment notes conflict with his assessment of the claimant's residual functional capacity." (Comm'r's Obj's to R&R ("Obj's") 2–3 (Dkt. No. 29).) Second, the Commissioner contends that the ALJ properly considered the evidence with respect to Dr. Rhea Johnson ("Dr. Johnson"), Plaintiff's psychiatrist and treating physician, and Joanne Baecher-DiSalvo ("Baecher-DiSalvo"), Plaintiff's social worker. (*See id.* at 8–9.) The Court reviews the portions of the R&R relevant to the Commissioner's objections de novo.

1. Failure to Develop the Record

    a. Heightened Duty to Develop the Record

In his R&R, Judge Davison adopted two legal conclusions pertaining to how an allegation of mental impairment impacts the process by which a claimant's eligibility for Social Security benefits is assessed. First, Judge Davison explained that "where a claimant suffers from an alleged mental impairment, the ALJ is required to utilize a 'special technique' at the second and third steps" of his eligibility determination. (R&R 27.)[2] Second, Judge Davison indicated that "an ALJ must pay careful attention to developing the record when a disability claim is based

---

[2] Judge Davison concluded that the ALJ employed this special technique. (R&R 29.)

upon a mental disorder." (R&R 29.) The Commissioner objects specifically to the second of these conclusions, and challenges its three sources: "a regulation, a ruling, and an unpublished opinion." (*See* Obj's. 4.)

The primary support for Judge Davison's conclusion that an ALJ must "pay careful attention to developing the record" is an appendix to a portion of the regulations governing Social Security eligibility. (*See* R&R 29.) The appendix provides that because there are "[p]articular problems . . . often involved in evaluating mental impairments in individuals who have long histories of repeated hospitalizations or prolonged outpatient care with supportive therapy and medication," problems which arise in cases of "chronic organic, psychotic, and affective disorders," the impairment may exceed what symptoms and signs indicate. 20 C.F.R. pt. 404, subpt. P., app. 1 § 1200(E). Therefore, the appendix provides that it is "vital" that an ALJ review "all pertinent information relevant to [the claimant's] condition, especially at times of increased stress." (*Id.*)

The Commissioner characterizes this portion of the appendix as "part of the introduction to the mental impairments listings" which "address[es] how the Commissioner assesses whether a chronic mental impairment is of listing-level severity," as opposed to "set[ting] a standard for development of the record where a claimant alleges a mental impairment." (Obj's 4–5.) Moreover, the Commissioner points out that the preceding section of the regulations explicitly "addresses the documentation of a mental impairment, and refers to the regulation at 20 C.F.R. § 416.912" as governing the development of evidence, which "applies equally to claims of physical and mental impairments." (Obj's 5.) Given that the language at issue appears in an appendix, and does not clearly lay out any heightened duty in cases of mental impairment, the

6

Court is persuaded that the appendix, *on its own*, does not support the proposition that claims of mental impairment occasion a heightened duty to develop the record.

There is, however, other support for Judge Davison's conclusion. In a footnote, Judge Davison cites a report and recommendation in *Lacava v. Astrue*, No. 11-CV-7727, 2012 WL 6621731 (S.D.N.Y. Nov. 27, 2012) (the "*Lacava* R&R"). (R&R 29 n.11.) While, as the Commissioner points out, the *Lacava* R&R is unpublished, (Obj's 6), it was adopted in its entirety by the district court, *see Lacava v. Astrue*, No. 11-CV-7727, 2012 WL 6621722 (S.D.N.Y. Dec. 19, 2012). In the *Lacava* R&R, Magistrate Judge Sarah Netburn ("Judge Netburn") explained that "the ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment," citing 20 C.F.R. pt. 404, subpt. P., app. 1 § 12.00(i), the very same portion of the regulations discussed above. *Lacava*, 2012 WL 6621731, at *11. Judge Netburn also cited Social Security Ruling 85-15, which discusses "the difficulty" in determining the disability of a person suffering from a mental health impairment, because such a person "adopt[s] a highly restricted and/or inflexible lifestyle within which they appear to function well," as well as *Caputo v. Astrue*, No. 07-CV-3992, 2010 WL 3924676 (E.D.N.Y. Sept. 29, 2010), which discusses the "enhanced obligation to obtain a broad view of the claimant's history and abilities is especially relevant once the ALJ has recognized an impairment and subsequently must determine the date of its onset." *Lacava*, 2012 WL 6621722, at *12 (internal quotation marks omitted).

The Commissioner challenges the relevance of both SSA Ruling 85-15 specifically and *Lacava* more generally. Addressing the former, the Commissioner contends that while the ruling "addresses the use of the medical-vocational guidelines as a framework for evaluating mental impairments," and the "need to evaluate whether a claimant can adapt to the demands of the

7

workplace where a claimant appears to be functioning in a structured setting," it "imposes no special duty on the [ALJ] to develop the record where a claimant alleges a mental impairment." (Obj's 6.) Addressing the latter, the Commissioner argues simply that the *Lacava* R&R should not be followed, citing several cases that purportedly stand for the proposition that after the Commissioner "has compiled a claimant's complete medical history . . . 'the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.'" (*Id.* (quoting *Rosa*, 168 F.3d at 79 n.5).)

The Court finds the Commissioner's objections on this point to be without merit. As an initial matter, although the Commissioner is correct that 20 C.F.R. § 416.912(d) establishes the same duty to develop the record to all disability claimants, its language is still consistent with the application of a heightened duty in some circumstances. Indeed, while the end of goal of "develop[ing]" a "complete medical history" is the same in all cases, more effort may be required to reach that goal when mental impairment is alleged because of the difficulties unique to such cases, as explained in Social Security Ruling 85-15 and Appendix 1. 20 C.F.R. § 416.912(d).[3]

For this reason, it is unsurprising that the *Lacava* court is not alone in the Second Circuit in holding that an ALJ has a heightened duty to develop the record when a claimant asserts a mental impairment. *See, e.g., Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704, 2015 WL

---

[3] It also bears noting that courts have held that an ALJ has a heightened duty to develop the record when a claimant appears pro se, as Plaintiff did here. *See, e.g., Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) ("The duty [to develop the record] is enhanced when a claimant appears without counsel . . . ."); *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (noting that there is a "special duty on the administrative law judge where the claimant appears without counsel"); *Smith v. Harris*, 644 F.2d 985, 989 (3rd Cir. 1981) ("Particularly where the claimant is unrepresented by counsel, the ALJ has a duty to exercise a heightened level of care and assume a more active role." (internal quotation marks omitted)).

321832, at *22 (S.D.N.Y. Jan. 23, 2015) ("The ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment."); *Bushansky v. Comm'r of Soc. Sec.*, No. 13-CV-2574, 2014 WL 4746092, at *5 (S.D.N.Y. Sept. 24, 2014) ("When a disability claim is based on a psychiatric illness[,] the ALJ's duty to develop the record is enhanced." (internal quotation marks omitted)); *Hidalgo v. Colvin*, No. 12-CV-9009, 2014 WL 2884018, at *4 (S.D.N.Y. June 25, 2014) (noting that the ALJ's duty to develop the record is "particularly important where an applicant alleges his is suffering from a mental illness"); *Camilo v. Comm'r of the Soc. Sec. Admin.*, No. 11-CV-1345, 2013 WL 5692435, at *22 (S.D.N.Y. Oct. 2, 2013) ("[I]t is the ALJ's duty to develop the record and resolve any known ambiguities, and that duty is enhanced when the disability in question is a psychiatric impairment."); *see also Meriwether v. Astrue*, No. 12-CV-67, 2014 WL 8850108, at *6 (D.D.C. Nov. 24, 2014) ("The duty [to develop the record] is heightened . . . when the claimant is the victim of a mental illness that may decrease his ability to represent himself." (internal quotation marks omitted)); *Schwanz v. Colvin*, No. 13-CV-1101, 2014 WL 4722214, at *11 (D. Or. Sept. 22, 2014) ("[T]he court considers the enhanced duty of the ALJ to develop the record in cases involving claimants with potential mental illness . . . ."); *Quevedo v. Colvin*, No. 13-CV-6146, 2014 WL 3529435, at *5 (C.D. Cal. July 15, 2014) ("[T]he ALJ's duty to develop [the record] was 'heightened' because there was evidence indicating the existence of a mental impairment.").

None of the cases that the Commissioner cites in support of her argument concern a claimant who asserts only a mental impairment, or, for that matter, reject the application of a heightened standard in such circumstances. *See Rosa*, 168 F.3d at 74 (physical disability resulting from fallen refrigerator door); *Coglitore v. Astrue*, No. 11-CV-3683, 2012 WL 2512391, at *1, *3, *6 (S.D.N.Y. June 29, 2012) (physical disability consisting, inter alia, of

lower back pain and diabetes, together with allegations of depression and anxiety for which the claimant never sought treatment); *Arboleda v. Astrue*, No. 12-CV-3987 (S.D.N.Y. filed May 18, 2012), Dkt. No. 30 at 2 (report and recommendation in case of physical disability consisting of sleep apnea, respiratory distress, and a clavicle fracture); *Batista ex rel. M.B. v. Astrue*, No. 08-CV-2136, 2010 WL 3924684, at *1 (E.D.N.Y. Sept. 29, 2010) (physical disability involving, inter alia, legs, ears, and heart); *Brown v. Comm'r of Soc. Sec.*, 709 F. Supp. 2d 248, 250 (S.D.N.Y. 2010) (physical disability consisting of pain and difficulty breathing); *Spurill v. Astrue*, No. 06-CV-5792, 2008 WL 4949326, at *2 (S.D.N.Y. Nov. 19, 2008) (physical disability resulting from multiple sclerosis). Accordingly, based on the case law, and because the Commissioner failed to identify any conflicting authority, the Court finds that Judge Davison correctly determined that the ALJ had a heightened duty to develop the record in this case.

### b. Failure to Re-contact the Treating Physician

The Commissioner next contends that Judge Davison incorrectly concluded that the ALJ erred in "not recontacting Dr. Johnson 'to seek additional information and clarification regarding her assessment of the nature and severity of [P]laintiff's impairments.'" (Obj's 7 (quoting R&R 32–33).) In support of his conclusion, Judge Davison cited two regulations, 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1), which collectively provide that the ALJ must "seek additional evidence or clarification from [the] medical source when [a] report from [the] medical source contains an conflict or ambiguity that must be resolved." (R&R 32.) Judge Davison also cited two cases—*Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396 (S.D.N.Y. 2010), which provides that "if a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician, as needed, to fill any gaps before rejecting the

10

doctor's opinion," *id.* at 428, and *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115 (2d Cir. 1998), (R&R 33).[4]

In response, the Commissioner notes that the regulations Judge Davison cited were terminated on March 26, 2012 "in order to give adjudicators more flexibility in determining when and how to obtain information from medical sources to resolve an inconsistency or insufficiency in the evidence." (Obj's 7.) The Commissioner is correct: section (e) was removed from both cited regulations on February 23, 2012 (effective March 26, 2012), and the summary of the final rule makes clear that such change was intended to "modify[] the requirement to recontact . . . medical source(s) first when [there is a] need to resolve an inconsistency or insufficiency in the evidence." How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,651 (Feb. 23, 2012) (codified at 20 C.F.R. pts. 404 and 416); *see also Borgsmiller v. Astrue*, 499 F. App'x 812, 815 n.4 (10th Cir. 2012) (recognizing that "[e]ffective March 26, 2012, the regulations governing an ALJ's 'duty' to recontact a medical source have changed," and rather than recontact the treating physician, the ALJ "may instead seek further evidence from another source, including the claimant herself").[5] Those regulations, therefore, do not govern this case.

The regulations that now control, 20 C.F.R. §§ 404.1520b(c)(1) and 416.920b(c), provide that re-contacting the treating physician is an *option* for correcting inconsistencies in the record, but that the ALJ "may choose not seek additional evidence or clarification from a medical source

---

[4] While, as the Commissioner correctly points out, the R&R misquotes *Clark*, in that case the Second Circuit nonetheless remanded to the district court because there was "a serious question as to whether the ALJ's duty to develop the administrative record was satisfied" because the ALJ had not sought out clarifying information from the doctor who had examined the claimant. *Clark*, 143 F.3d at 118.

[5] The Court notes that a number of other courts have made the same error and applied the now-outdated regulations.

11

if [the ALJ] know[s] from experience that the source either cannot or will not provide the necessary evidence." 20 C.F.R. § 416.920b(c)(1); *see also Cancel v. Colvin*, No. 14-CV-2034, 2015 WL 865479, at *4 (S.D.N.Y. Mar. 2, 2015) (noting that the regulations "require the SSA to attempt to resolve inconsistencies or insufficiencies in the medical record, and suggest, as the first two options for doing so, recontacting the claimant's treating physician or requesting additional existing records"). Nonetheless, courts in the Second Circuit have concluded, citing these regulations, that the ALJ still has an obligation to re-contact the treating physician in some cases. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (noting that, in a case where the treating physician's opinion was "remarkably vague," that "[a]t a minimum, the ALJ likely should have contacted [the treating physician] and sought clarification of his report," citing these regulations); *Ashley v. Comm'r of Soc. Sec.*, No. 14-CV-40, 2014 WL 7409594, at *4 (N.D.N.Y. Dec. 30, 2014) (concluding that in the circumstances of the case, under these regulations, "[t]he ALJ ought to have contacted the doctor for clarification on his conclusion"). Accordingly, the change in the regulations does not mean that the ALJ here had no duty to re-contact the treating physician.

The Commissioner also contends that *Clark* is inapplicable because, unlike in *Clark*, where the court found that the treating physician could have clarified his report with clinical findings, the record in this case already contains Dr. Johnson's clinical findings, which show "continued improvement[] and that [P]laintiff's symptoms imposed only moderate limitations." (Obj's 7–8.) The Commissioner's reading of *Clark*, however, is overly narrow. The *Clark* court noted that, if contacted, the treating physician in that case also "might have been able to provide a medical explanation for why [the plaintiff's] condition deteriorated over time." *Clark*, 143 F.3d at 118. Thus, *Clark* stands for the general proposition that an ALJ may, in some

circumstances, have an obligation to recontact the treating physician as part of his or her "duty to develop the administrative record." *Id.*

The Second Circuit has, on other occasions, and outside the context of the governing regulations, found that an ALJ sometimes has an obligation to seek additional information from the treating physician, deriving that obligation, again, from the ALJ's general duty to develop the record. *See, e.g., Selian*, 708 F.3d at 420 ("To the extent [the] record is unclear, the Commissioner has an affirmative duty to fill any gaps in the administrative record before rejecting a treating physician's diagnosis." (internal quotation marks omitted)); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("In light of the ALJ's duty to affirmatively develop the administrative record, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." (internal quotation marks omitted)); *Schaal*, 134 F.3d at 505 ("First, even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from the [treating physician] sua sponte." (italics omitted)). Therefore, the Court holds that, in some cases, the nature of the record may render re-contacting the treating physician the best, if not the only, way to address gaps or inconsistencies in the record, such that it is incumbent upon the ALJ to do so.

This is such a case. In making his decision, the ALJ, at step four of his analysis, determined that he could not afford "great weight" to two reports Dr. Johnson submitted in connection with this matter. (Administrative Record ("A.R.") 17 (Dkt. No. 11); *see also* R&R 10, 15–16 (summarizing Dr. Johnson's evaluation).) The ALJ determined that Dr. Johnson's assessment of Plaintiff's "marked occupational" and "mental limitations," including her diagnosis of bipolar disorder and attention deficit hyperactivity disorder, was "inconsistent" with Dr. Johnson's "own treatment notes" and "the objective evidence contained in the record and

[Plaintiff's] own statements . . . regarding his mental functioning." (A.R. 17.) While the ALJ certainly is entitled to assess the treating physician's opinion to determine how much weight to afford it, *see* 20 C.F.R. § 404.1527(c), at least some of the deficiencies that the ALJ points out, namely apparent inconsistencies between Dr. Johnson's own notes and her reports and a failure to "document the signs and symptoms" in treatment logs, are precisely the types of inconsistencies that Dr. Johnson would best be able to resolve. (A.R. 17.) Indeed, the summary of the aforementioned rule which eliminated the re-contacting requirement contemplates sensitivity to the "nature of the inconsistency" in determining how best to resolve it, and appears to recognize that the change in the regulations only "significantly reduce[s]," rather than eliminates, the need to re-contact a treating physician in Social Security eligibility cases. *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. at 10,651. Here, the ALJ has made no finding, nor has the Commissioner made any argument, about why Dr. Johnson could not have resolved at least some of the inconsistencies at issue, the only circumstance in which the regulations explicitly provide that re-contacting the treating physician is inappropriate. *See* 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c).

Granted, "[t]he courts leave it to the finder of fact to resolve any conflicts there may be in the medical testimony," and "the ALJ need not 'reconcile every conflicting shred of medical testimony.'" *Johnson v. Colvin*, No. 14-CV-2334, 2015 WL 400623, at *9 (S.D.N.Y. Jan. 30, 2015) (quoting *Galotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008)), *adopted by* 2015 WL 3972378 (S.D.N.Y. June 1, 2015). Nonetheless, because many of the inconsistencies at issue here likely can be explained by Dr. Johnson, and given the heightened duty to develop the record in cases of mental impairment discussed above, the Court finds that the ALJ had an obligation to re-contact Dr. Johnson to seek clarifying information. *See, e.g., Cancel*, 2015 WL 865479, at

\*4–5 (remanding case and holding, citing the now-controlling regulations, that the ALJ failed to develop the record because the ALJ did not request additional records or information from the claimant's three psychiatrists in light of "perceived inconsistencies"); *Ashley*, 2014 WL 7409594, at \*3–4 (remanding case and holding, citing the now-controlling regulations, that "[w]hile the regulations afford an ALJ broad discretion in determining and resolving inconsistencies," the ALJ erred in failing to "contact[] the doctor for clarification" of apparent inconsistency between treating physician's conclusion and treatment records); *Munoz v. Colvin*, No. 13-CV-1269, 2014 WL 4449788, at \*13 (S.D.N.Y. Sept. 10, 2014) ("In this Circuit . . . where . . . the ALJ finds a treating physician's opinion lacking in support, he or she must seek additional information from the treating physician *sua sponte* before rejecting his or her opinion."); *Ryszetnyk v. Astrue*, No. 12-CV-2431, 2014 WL 2986700, at \*11 (E.D.N.Y. July 1, 2014) ("If the ALJ was concerned that [the treating physician's] functional capacity assessment contradicted his treatment notes or any other part of the record, she should have requested additional information from him in order to fill any gap or deficiency in the record."); *Mendolia v. Astrue*, No. 10-CV-417, 2013 WL 3356960, at \*6 (E.D.N.Y. July 3, 2013) (holding, without citing the outdated regulations at issue, that the ALJ failed to develop the record because he did not seek additional information from the treating physician to resolve "perceived inconsistencies in his medical opinion"); *Padro v. Astrue*, No. 10-CV-3387, 2012 WL 3043166, at \*6 (E.D.N.Y. July 25, 2012) (same); *cf. Hidalgo*, 2014 WL 2884018, at \*4 ("The ALJ must contact medical sources and gather additional information if the ALJ believes that the record is inadequate to make a determination. When the ALJ has failed to develop the record adequately, the District Court must remand the case to the Commissioner for further development." (citing *Pratts v. Charter*, 94 F.3d 34, 39 (2d Cir. 1996))). *But see Thompson v. Colvin*, No. 12-CV-

7024, 2014 WL 7392889, at *17 (S.D.N.Y. Dec. 29, 2014) (holding that ALJ had no obligation to re-contact treating physician because her assessment was also inconsistent with the plaintiff's testimony); *Vanterpool v. Colvin*, No. 12-CV-8789, 2014 WL 1979925, at *3 (S.D.N.Y. May 15, 2014) (holding that mere inconsistency in the record did not require an ALJ to re-contact the treating physician for clarification, where there was no obvious gap in the record); *Barry v. Colvin*, No. 12-CV-1124, 2014 WL 1219191, at *3 (W.D.N.Y. Mar. 24, 2014) ("If the ALJ already possess a complete medical history, he is not obligated to [re-contact] a physician."), *aff'd*, No. 14-CV-1792, 2015 WL 1782315 (2d Cir. Apr. 21, 2015). Accordingly, the Court concludes that Judge Davison did not err in finding that the ALJ failed to adequately develop the record, which finding is sufficient, on its own, for the Court to remand the case. *See Pratts*, 94 F.3d at 39 ("When there are gaps in the administrative record . . . we have, on numerous occasions, remanded . . . for further development of the evidence." (internal quotation marks omitted)); *Echevarria v. Sec'y of Health and Human Servs.*, 685 F.2d 751, 753 (2d Cir. 1982) ("Because in our view there was a failure to develop a full and adequate record, we reverse and remand for a new administrative hearing."); *Corporan*, 2015 WL 321832, at *22 ("When the ALJ has failed to develop the record adequately, the district court must remand to the Commissioner for further development.").

### 2. Failure to Adequately Consider the Record

#### a. Treating Physician Rule

Judge Davison also recommended that the Court remand the case because the ALJ failed to follow the "treating physician rule" when he did not explicitly consider "the frequency, length, nature[,] and extent of treatment[,] and the amount of medical evidence supporting Dr. Johnson's opinion." (R&R 32.) The Commissioner objects to this conclusion and contends that because

16

"the ALJ thoroughly considered and analyzed Dr. Johnson's opinion and gave good reasons for the weight he accorded Dr. Johnson's opinion," the ALJ "'applied the substance of the treating physician rule,' and his decision should be affirmed. (Obj's 9 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004)).)[6]

The Commissioner is correct that a recitation of every factor of the treating physician rule is unnecessary; the ALJ need not explicitly consider each factor of the treating physician rule, but rather must only follow its mandate more generally. *See Halloran*, 362 F.3d at 32–33; *see also Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."). While in one case, *Selian v. Astrue*, 708 F.3d 409 (2d Cir. 2013), the Second Circuit indicated that it previously "held that the ALJ must explicitly consider" the factors that make up the treating physician rule, *id.* at 418, (a) that case did not turn on an explicit-consideration standard, and (b) the only case it cited in support was *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008), which itself did not articulate an explicit-consideration standard in its discussion of the

---

[6] The Commissioner also makes an argument in the "consideration of the evidence" portion of her objections that is reminiscent of the objection considered above, namely that "the ALJ considered both a complete set of treatment notes and multiple opinions from Dr. Johnson," and then "determined that [the opinions] were inconsistent with each other and the . . . treatment notes." (Obj's 8.) The Commissioner contends that these conflicts in the medical evidence were "the ALJ's duty to resolve," (*id.*), and cites *Veino v. Barnhart*, 312 F.3d 578 (2d Cir. 2002), for the proposition that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve" by accepting parts of a doctor's opinion and rejecting others, (*id.* (citing *Veino*, 312 F.3d at 588)). The Commissioner misrepresents the *Veino* opinion: the *Veino* court did not refer specifically to a situation in which the treating physician's own opinion was inconsistent with itself, but rather to a situation in which it was "contradicted by other substantial evidence on the record." *Id.* Moreover, unlike the situation in *Veino*, where the ALJ compared the medical evidence offered by the treating physician to that offered by the consultative examiner, *id.*, the ALJ here only stated that Dr. Johnson's report was "not consistent with the examination" of Dr. Alan Dubro, the consultative examiner, (A.R. 17). The instant case therefore better resembles the cases discussed *supra*, wherein ALJs failed to adequately develop the record because they did not re-contact the treating physician. This objection is, accordingly, without merit.

17

treating physician rule, *id.* at 129.[7] Accordingly, the Court concludes that the cases that found an explicit recitation of the factors unnecessary are controlling, and concludes that Judge Davison erred in faulting the ALJ for not making explicit findings about each factor of the treating physician rule. (R&R 32.)[8]

### b. Opinion of Baecher-DiSalvo

Judge Davison also concluded that the ALJ "failed to properly consider the opinion of [social worker] Baecher-DiSalvo," which was the most "extensive" examination of "[P]laintiff's mental impairment." (R&R 33–34.) In particular, Judge Davison found that the ALJ "inexplicably ignored [P]laintiff's course of treatment at [the hospital] from July 2009 through December 2009," and "did not acknowledge any findings in Baecher-DiSalvo's medical source statement, apart from his dismissal of her GAF rating (45)." (R&R 34.) In this vein, Judge Davison emphasized the importance of non-medical opinions, including the opinions of licensed social workers. (R&R 33–34 (citing SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006) (noting that opinions from "licensed clinical social workers . . . . are important and should be evaluated on key issues such as impairment severity and functional effects")).) *See also Mitchell*

---

[7] While the Second Circuit applied the explicit-consideration standard in one other 2010 summary order, *see Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010), among the other federal circuits, such standard appears to have only been applied in a single unpublished case, *see Dominguez-Herrera v. Astrue*, 334 F. App'x 651, 653 (5th Cir. 2009).

[8] Notably, however, "the 'treating physician rule' is inextricably linked to the duty to develop the record. Proper application of the rule ensures that the claimant's record is comprehensive, including all relevant treating physician diagnoses and opinions, and requires the ALJ to explain clearly how these opinions relate to the final determination." *Johnson*, 2015 WL 400623, at *8 (some internal quotation marks omitted); *accord Grant v. Colvin*, No. 13-CV-7673, 2014 WL 4667327, at *12 (S.D.N.Y. Sept. 19, 2014); *Lacava*, 2012 WL 6621731, at *13. Therefore, while it was not error for the ALJ to not explicitly cite the factors that make up the treating physician rule, the ALJ may have violated the rule by, as noted above, failing to seek additional information from Dr. Johnson regarding perceived inconsistencies in her opinion.

*v. Colvin*, No. 09-CV-5429, 2013 WL 5676289, at *8 (E.D.N.Y. Oct. 17, 2013) (noting that such opinions may "properly be determined to outweigh the opinion from a medical source, including a treating source" (internal quotation marks omitted)).

In response, the Commissioner argues that the ALJ properly "afforded the social worker's assessments little weight . . . because her report that [P]laintiff had marked limitations conflicted with opinions from acceptable medical sources that [he] had only mild to moderate limitations." (Obj's 9). As an example, the Commissioner cites Dr. Alan Dubro's ("Dr. Dubro") opinion, wherein Dr. Dubro concluded that his findings "were consistent with mood disorder symptoms that did not significant[ly] interfere with [P]laintiff's ability to function on a daily basis." (*Id.* at 10.)

It is within the ALJ's discretion to evaluate Baecher-DiSalvo's report and determine what weight to afford it based on the evidence in the record. *See Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995) ("[T]he ALJ has the discretion to determine the appropriate weight to accord [an] . . . opinion based on all the evidence before him . . . ."); *Genovese v. Astrue*, No. 11-CV-2054, 2012 WL 4960355, at *15 (E.D.N.Y. Oct. 17, 2012) (noting than an ALJ "should use his discretion to determine the appropriate weight to accord the opinion" of a medical source other than the treating physician (internal quotation marks omitted)). Here, the ALJ afforded "[l]ittle weight" to Baecher-DiSalvo's opinion because the ALJ determined that the opinion was contradicted by other evidence in the record. (A.R. 18.)[9] Accordingly, the ALJ acted appropriately within his discretion: far from disregarding Baecher-DiSalvo's opinion, the ALJ reviewed it and, on its merits, determined that it was not entitled to substantial weight. Judge

---

[9] The ALJ appears to have also discounted Baecher-DiSalvo's opinion because it "was completed specifically for the purposes of claiming disability." (A.R. 18.)

19

Davison therefore erred in finding that the ALJ failed to properly consider Baecher-DiSalvo's opinion.[10]

## II. Conclusion

For the foregoing reasons, the Court adopts Judge Davison' Report and Recommendation in part, finding that while the ALJ adequately considered the record, he failed to sufficiently develop it. The case is therefore remanded for further administrative proceedings consistent with this opinion pursuant to 42 U.S.C. § 405(g).

SO ORDERED.

DATED:     July 30, 2015
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[10] The Court notes, however, that Judge Davison is correct that the ALJ appears to have ignored five months of Plaintiff's treatment, namely the treatment Plaintiff received from July 2009 through December 2009. (R&R 34.) The ALJ should clarify this portion of his findings on remand.

20